# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

RILEY ANN NORMAN[1]                                              PLAINTIFF

V.                                         CIVIL ACTION NO. 1:16CV152 LRA

NANCY BERRYHILL,
COMMISISONER OF SOCIAL SECURITY                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

Riley Ann Norman appeals the final decision denying her second application for supplemental security income (SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the Court finds that the decision should be affirmed.

On May 6, 2014, Plaintiff filed the instant application for SSI alleging a disability onset date of January 26, 2013, due to anxiety, arm impingements, swelling in her legs and ankles, problems with her right foot, and pain in her shoulder, elbow, neck, and right ankle. She was 49 years old on her application date, and has a GED with past relevant work experience as a housekeeper, a shuttle-bus driver, and assembly worker. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning

---

[1] The parties are hereby advised that the Court is in receipt of emails from an individual named Anna White, who claims to know the Plaintiff. These emails were sent to the District Judge originally assigned to this case, and then forwarded to the undersigned. It is well-established that evidence outside the administrative record is generally inadmissible, and this Court's judicial review is limited to the administrative record filed by the Commissioner. The Court has not considered these emails in reaching its decision, but directs the clerk to file them with restricted access.

of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision. A review of the record reveals that Plaintiff filed a prior application which was denied by the Appeals Council on March 27, 2014. No appeal was taken from that decision making it administratively final. In this regard, the ALJ noted that records from the prior period of adjudication were reviewed but not considered.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 6, 2014, the application date. At steps two and three, the ALJ found that Plaintiff's degenerative disc disease; osteoarthritis; mild degenerative joint disease of shoulders with impingement syndrome; obesity; lower-extremity edema; anxiety disorder; and pain disorder were severe, but they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the following exceptions:

> No exposure to unprotected heights or hazardous machinery; and occasional overhead reaching. She can perform simple, routine tasks; with no direct interaction with the public. She can work in close proximity to others, but she must work independently, not in a team.[3]

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3] ECF No. 9, p. 19.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a housekeeper, cafeteria attendant, and mail clerk.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**DISCUSSION**

Plaintiff appeals the ALJ's denial of her claim for one central reason: the ALJ failed to provide good cause for rejecting her treating physician's opinion. Specifically, she maintains that the ALJ's reasons for rejecting the opinion were not supported by substantial evidence, and remand is warranted because her treating physician indicated that she was disabled.

3

Plaintiff testified at the administrative hearing that a combination of severe physical and mental impairments prevents her from performing any employment on a continuing basis. Chronic edema requires her to elevate her legs and a "roll-away" right ankle causes her to frequently fall. She has back and neck pain, migraine headaches, and limited use of her upper extremities. She has worn a sling on her right arm every day for the past three years, and her left arm has worsened as a result of overuse. She has taken narcotic pain medication for years but testified that she recently stopped seeing her pain management specialist after he declined to pre-authorize her medications; she has continued to take antidepressants as needed for anxiety and depression, however. She has Medicaid and United Healthcare, but testified that lapses in coverage have affected her ability to seek treatment. Plaintiff asserts that her limitations prevent her from concentrating, standing or walking longer than 15-20 minutes, or from lifting her arms over her head.[4]

### 1.

In evaluating the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but her testimony regarding the intensity, persistence, and limiting effects were not fully credible. The ALJ concluded that Plaintiff has the residual functional capacity to physically perform light work limited to occasional overheard reaching and no exposure to unprotected heights. As her first point of error, Plaintiff asserts that this determination

---

[4] ECF No. 9, pp. 35-54.

conflicts with the opinion of her treating physician, Dr. Bita Ghaffari, who found Plaintiff's limitations would effectively preclude her from performing even sedentary work.

Dr. Ghaffari opined that Plaintiff could not, *inter alia*, sit, stand, or walk for longer than 15-20 minutes at a time; lift or carry more than 10 pounds; bend more than 20%; or use either arm for a full workday. The ALJ concluded that Dr. Ghaffari's opinion was inconsistent with the evidence as a whole and her own treatment notes, showing no edema and a low pain rating. Plaintiff notes that Dr. Ghaffari found trace edema on one occasion, but she acknowledges in her memorandum brief that Dr. Ghaffari did not treat her for the physical impairments she alleges are disabling. Records show that Pain-Management Specialist, Dr. Fanni Manney, was Plaintiff's primary provider until he declined to pre-authorize her prescriptions, while Dr. Ghaffari, her family practitioner, primarily treated her for anxiety, insomnia, and minor ailments from 2012-2015. Given their extensive treating relationship however, Plaintiff argues that Dr. Ghaffari could "make an informed assessment of [her] overall physical limitations" and her opinion is entitled to great weight.[5]

In support, Plaintiff relies heavily on medical records generated prior to the current application which detail her treatment history with Dr. Manney. Those records show that Plaintiff had a slow gait and subjective reports of pain as high as 10 out of 10 on multiple occasions. As the ALJ notes, by her last visit of record with Dr. Manney on

---

[5] ECF No. 14, p. 13.

January 22, 2015, Plaintiff reported that her pain had improved, decreasing as much as 70% following a change in medication.

A review of medical records generated by the medical sources, including Dr. Ghaffari, does not support the degree of limitations that Dr. Ghaffari assigned. In a visit with Dr. Ghaffari on January 14, 2015, for example, Plaintiff had some edema, but rated her pain as a 4 or 5 on a scale of 1 to 10. Plaintiff went to the Gulfport Memorial Hospital emergency room on March 18, 2015, complaining of shoulder and ankle pain and fell in the process of getting discharged. She was diagnosed with a shoulder sprain and instructed to take over-the-counter medication.[6] The next day, Plaintiff went to a different emergency room (Hancock Medical Center) to request prescription refills for medications that were no longer being prescribed by Dr. Manney, but records show she left before triage. In the following weeks, while Plaintiff continued to complain of shoulder pain, examination findings showed a decreased range of motion in some joints, and x-rays revealed mild scoliosis and degenerative changes, but she otherwise had normal musculoskeletal findings. In April 2015, Dr. Letort, a treating neurologist, found some antalgic weakness in Plaintiff's shoulders, but full range of motion in all four extremities and a normal gait. In August 2015, Dr. Cobb, a consultative examiner, reported that Plaintiff had edema and a mild limp but ambulated without assistance. She had 4/5 strength in her shoulders; full strength in the remainder of her upper extremities;

---

[6] There appear to be conflicting accounts as to what caused Plaintiff to fall. One record notation indicates that she said her right leg gave out, while another notation indicates that Plaintiff accused the hospital staff member who pushed her wheelchair during discharge of causing her to fall. ECF No. 9, pp. 462-77.

and, tenderness in her right ankle but full range of motion. The ALJ weighed all of this evidence against the limitations assigned by Dr. Ghaffari.[7]

Generally, the opinion and diagnosis of a treating physician should be given considerable weight in determining disability. But the treating physician's rule is "not an ironclad rule." *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015). "[S]uch opinions can be disregarded if they are 'brief and conclusory, not supported by medically acceptable clinical diagnostic techniques, or otherwise unsupported by the evidence.'" *Id.* (quoting *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005)).

Plaintiff contends that the ALJ's decision not to credit Dr. Ghaffari was not supported by substantial evidence. But she does not point to any evidence supporting the limitations assigned by Dr. Ghaffari. The ALJ did not err in giving more weight to the board-certified treating neurologist than to Dr. Ghaffari, who is not a specialist in this area. *See* 20 C.F.R. § 404. 1527(d)(5). Nor did she err in assigning more weight to the diagnostic evidence than to Plaintiff's subjective complaints. The ALJ did not discount favorable evidence either. She repeatedly acknowledged that medical records documented Plaintiff's complaints, diagnoses, and treatments, including a slowed, antalgic gait and reduced range of motion in her arms. But the ALJ reasonably concluded that Plaintiff's impairments were "amenable to appropriate medical treatment," and thus not as severe as alleged. A "medical condition that can reasonably be remedied either by

---

[7] ECF No. 9, pp. 379-410, 435-460, 480-516.

surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

In assessing the degree to which Plaintiff's physical impairments affect her residual functional capacity, the ALJ made the following observations:

> [A] careful review of the overall evidence or record reveals some normal x-rays and a multitude of relatively normal examination findings, including a normal gait on several occasions, normal range of motion in her extremities on some occasions, only slightly reduced shoulder strength, and normal grip strength in her hands. Finally, the record includes the claimant's reported activities and abilities, which further undermine the severity of her allegations, and include preparing simple meals, performing household chores, driving, reading, photography, parenting teenagers, and exercising occasionally.
>
> Accordingly, the aforementioned objective findings, including the multitude of relatively normal examination findings, as well as the claimant's admitted activities indicate that the claimant's symptomology resulting from degenerative disc disease, osteoarthritis, degenerative joint disease, obesity, and lower-extremity edema are not disabling. However, claimant's symptomology can reasonably be expected to cause some limitations to the claimant's ability to function. The limitation to the light exertional level accommodates her degenerative disc disease, osteoarthritis and degenerative joint disease of the shoulders, obesity, and lower-extremity edema. The limitation to occasionally reaching overhead further accommodates these musculoskeletal impairments, specifically antalgic weakness in the shoulders, despite 4 to 5 of 5 motor strength and ability to reach three-fourths of normal overhead, reach behind to the mid lumbar area, and reach across to the opposite shoulder. The preclusion against exposure to unprotected heights and hazardous machinery accommodates the claimant's reported falls, as well as potential for medication side effects.[8]

Substantial evidence supports the ALJ's findings. It is the sole responsibility of the ALJ to interpret the medical evidence to determine a claimant's residual functional capacity

---

[8] ECF No. 9, p. 23.

for work.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  There is no requirement to present limitations that are not borne out by the record.

The ALJ was within her discretion to find that Dr. Ghaffari's conclusion that Plaintiff was incapable of performing even a reduced range of sedentary work did not outweigh the other substantial evidence supporting a finding of no disability.  The ALJ's analysis of the medical opinions was thorough and accurate, and her findings regarding the weight and interpretation of the evidence are substantially supported by the record.

**2.**

Plaintiff asserts that the ALJ also erred in failing to accept the mental limitations assigned by Dr. Ghaffari.  In weighing the evidence, the ALJ concluded that Plaintiff had the mental residual functional capacity to perform simple, routine tasks, so long as she works independently and has no direct interaction with the public.  Plaintiff submits that these limitations conflict with Dr. Ghaffari's opinion that she has "marked" limitation in dealing with work-related stress. "The interpretation of an expert's opinion is committed to the discretion of the ALJ, however." *Smith v. Chater*, 68 F.3d 471 (5th Cir. 1995).  Dr. Ghaffari's opinion does not proscribe Plaintiff from fulfilling the ALJ's residual functional capacity.

The ALJ explained that she gave only partial weight to Dr. Ghaffari's assessment because the degree of limitation assigned was inconsistent with her treatment notes, the examinations of other physicians, the absence of mental health treatment, and Plaintiff's daily activities, which include preparing meals, performing household chores, driving, homeschooling her teenage daughter, reading, photography, and handling her own

9

finances.  While Dr. Ghaffari's records document agitation, anxiety, and pressured speech at times, Plaintiff concedes that other providers did not make similar observations.  Multiple records during the period of adjudication revealed she had a pleasant and cheerful affect, alertness and orientation, normal memory and concentration, and an appropriate mood.  The ALJ did not discount Dr. Ghaffari's observations entirely, however.  She noted that there was record evidence of irritability, anger, and "socially inappropriate drug-seeking behavior." [9]  A consulting psychological examiner also opined that Plaintiff had a poor ability to behave in an emotionally stable manner and demonstrate reliability, but as noted by the ALJ, the examiner still found Plaintiff had the mental capacity to perform routine, repetitive tasks; to adequately interact with coworkers and receive supervision; and, to have fair attention and concentration.[10]

The ALJ found this to be consistent with the overall evidence of record and considered it in conjunction with Plaintiff's daily activities and the absence of "consistent, ongoing treatment from a mental health specialist despite having Medicaid during the period of adjudication."  Plaintiff's only apparent visit to a mental health specialist was in May 2015.  The specialist reported that she could not make any conclusions about Plaintiff's mental health based on their brief meeting, and noted that Plaintiff did not reschedule or follow-up.  While Plaintiff testified at the administrative hearing that she recalled seeing another psychologist or psychiatrist every two weeks, she could not recall the doctor's name or the name of the clinic.  A claimant's failure to seek

---

[9] ECF No. 9, pp. 462-477.

[10] ECF No. 9, pp. 13, 557-562.

treatment is a relevant factor to consider in determining the severity of an impairment, and may be used in conjunction with the claimant's daily activities and medical reports to discount complaints of disabling pain or other limitations. *Doss v. Barnhart,* 137 F. App'x 689, 690 (5th Cir. 2005); *Anthony,* 954 F.2d at 295; *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990).[11]

Plaintiff has failed to establish that her impairments impact her ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity assessment. While her mental impairments may impose some difficulties, they were no more than moderate. Substantial evidence supports the ALJ's finding that Plaintiff could perform light unskilled work subject to the limitations of her residual functional capacity.

**Conclusion**

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is denied and her appeal is dismissed with prejudice. A Final Judgment in favor of the Commissioner shall be entered.

SO ORDERED on September 27, 2017.

s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

---

[11] *Id*. at 24, 44, 478.